**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 24-CR-82 (TJK)** |
| | : | |
| **TAMONIE CHAMBLISS,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that defendant Tamonie Chambliss be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(B) (Maximum Sentence of Life Imprisonment) and 3142(f)(1)(E) (Offense Involving a Firearm). The government requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pretrial detention.

## I.     Procedural History

Defendant Tamonie Chambliss is charged by indictment with unlawful possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and § 841(b)(1)(D); using, carrying, and possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A); unlawful possession of a firearm by an individual previously convicted of a crime of violence, in violation of Title 22, D.C. Code §§ 4503(a)(1) and (b)(1); possession of a large capacity ammunition feeding device, in violation of Title 7, D.C. Code § 2506.01(b); and possession of unregistered ammunition, in violation of Title 7, D.C. Code § 2506.01(a). There is

a rebuttable presumption that the defendant be held under 18 U.S.C. § 3142(e)(3)(B), as he is charged with § 924(c) offense.

The Defendant was indicted by a grand jury on February 15, 2024.  He was arrested in Laurel, Maryland, on March 15, 2024, and made his initial appearance the same day.

## II.    <u>Factual Background</u>

This case arises from a vehicle search conducted in March 2023, and a residential search in July 2023.  During the former, law enforcement recovered marijuana and a large capacity magazine associated with the Defendant; during the latter, law enforcement recovered additional marijuana and a Glock firearm with the Defendant's DNA on it.

The context of the case is an investigation into drug trafficking in and around the 5300 block of Clay Terrace NE in Washington, DC.  Beginning in July 2022, and until the summer of 2023, members of the Metropolitan Police Department's Violence Reduction Unit (VRU), in conjunction with the Federal Bureau of Investigation (FBI), investigated sales of controlled substances and crimes of violence involving firearms that occur in that area.  During the course of the investigation, law enforcement identified a group, or "crew," of individuals believed to be involved in narcotic sales involving the distribution of phencyclidine (PCP), crack cocaine, fentanyl, marijuana, and pills; acts of violence; and the transfer and possession of illegal firearms. Some members of this group identify themselves as part of the "Clay Terrace Hitsquad" or "Double Back Gang."  One member of this crew was the Defendant.



*An Instagram post tagged "Clay Terrace HitSquad," showing the Defendant second from right*

The Defendant had been identified during the investigation as a narcotics dealer specializing in the sale of marijuana. Public Instagram posts by the Defendant, under his Instagram username "moneyman_biggs," showed the Defendant openly marketing marijuana with distinctive packaging showing the Defendant's face:

3



*Moneyman_biggs Instagram post from November 21, 2021*

1. *March 7, 2023 Search of Lexus*

On March 7, 2023, members of the Sixth District Crime Suppression Team were conducting routine patrols in the area of the Richardson Dwelling apartment complex due to an increase in gun violence in the area, and observed a gray Lexus sedan parked in front of 260 54th St. NE, one block from Clay Terrace, surrounded by a small group of individuals who quickly departed when the police cruiser approached.

4

Based on this quick departure, officers looked into the passenger compartment of the vehicle. Officers immediately observed a clear twist-tied bag containing a tan powder substance in the driver door coin pocket, which appeared consistent with heroin. Officers opened the front driver side door and inspected the substance, which was discovered not to be contraband. They immediately closed the driver door and continued their investigation of the vehicle.

The Lexus bore a District of Columbia license plate GH 8204. A WALES/NCIC query was conducted on the plate which revealed that the tag was reported stolen on August 28, 2020, from the District of Columbia. A query on the VIN (JTHBK1GG5E2106272) returned that the vehicle was unregistered. Multiple people approached the vehicle and claimed to own it but refused to provide identifying documents and left.

Officers observed the Defendant—known to the officers—standing across the street. Officers ran a history check of the Lexus's VIN and found that the Defendant had been operating it when it was stopped in Laurel, Maryland. Based on the suspicious behavior of the individuals who attempted to claim ownership of the vehicle, law enforcement called a firearm-detecting K9 to the scene. Another person approached the officers and claimed the vehicle was hers, presenting an apparently fictitious insurance card listing Tamonie Chambliss as an operator of the vehicle. This person refused to answer where the stolen license plate came from.

Upon arrival of the K9, the Defendant departed the scene. The K9 alerted for the presence of firearm materials. Officers searched the vehicle and recovered:

- 1 clear twist sandwich bag in the center console containing 10 stamped M-30 pills (Oxycodone);

- A black Fortnite-branded backpack containing the following:

5

- o   1 bag of green leaf substance weighing 444 grams;

- o   1 bag of green leaf substance weighing 476.5 grams;

- o   1 bag of green leaf substance weighing 43.5 grams;

- o   1 bag of green leaf substance weighing 12.0 grams;

- o   1 black scale;

- o   Multiple zip-top bags; and

- o   1 30-round extended magazine, containing 21 rounds of 45 caliber ammunition.





The total amount of green leafy substance weighed approximately 976 grams, or 34.4 ounces. A portion of the substance field-tested positive for marijuana. The vehicle also contained credit cards, identification cards, and a Maryland vehicle registration assigned to the Defendant.[1] Mr. Chambliss was arrested but the charges were no-papered in Superior Court.

    *2. July 2023 Search of 5379 Clay Terrace NE*

As part of the Clay Terrace investigation, law enforcement obtained a search warrant for the Defendant's residence, 5379 Clay Terrace NE, which was executed on July 26, 2023. The Defendant was not present for the execution of the warrant. Law enforcement recovered the following items of note:

---

[1] The Defendant had also been observed operating the vehicle, and carrying the Fortnite-branded backpack, on multiple occasions in February 2023.

- 1 Glock 30S .45 caliber handgun bearing serial number BWER198, with 1 round in chamber and 11 rounds in a 13-round magazine;

- 1 inside-the-waistband handgun holster;

- 1 black backpack containing three plastic bags of "green weed substance" with the following weights:

  - 21.5 grams;

  - 26.74 grams;

  - 300 grams.

The backpack and its contents are shown below:



The handgun and holster were recovered from an upper kitchen cabinet, within a few steps of the drugs:







Notably, the handgun used the same caliber ammunition as was found in the gray Lexus in March 2023.

Three other individuals were present in the residence during the search.  All three consented to buccal swabs for DNA testing.  The Defendant's buccal swab, the buccal swabs of the three individuals in the residence, and swabs from the firearm and magazine were sent to the FBI laboratory for analysis.  On January 8, 2024, the results came back, indicating "very strong support" for the Defendant's inclusion on all three evidence swabs (e.g., a likelihood ratio of 760 quintillion for Chambliss's inclusion on the firearm), and the exclusion of most or all of the other individuals.

   *3.   The Defendant's March 15, 2024 Arrest*

On the morning of March 15, 2024, the U.S. Marshals Service executed an arrest warrant at an address in Laurel, Maryland, where the Defendant was found to be residing.  Upon securing

the Defendant and the residence, law enforcement observed in plain view multiple packages of
suspected marijuana, totaling approximately 3.4 kilograms.  This total comprised four vacuum-
sealed bags, each weighing just over half a kilogram, two large plastic twist-tied bags weighing
just over one pound each, and another large twist-tied bag weighing approximately 300 grams.  A
selection of photographs of the seized packages are below:





The suspected marijuana was recovered from the bedroom where the Defendant was staying, and from a kitchen counter. A portion of the substance was field tested and tested positive for the presence of THC.

### III.   <u>Legal Authority and Argument</u>

Pursuant to 18 U.S.C. § 3142(e)(3)(B), there exists a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the defendant's appearance in this case and otherwise protect the community.[2] By itself, an indictment establishes that probable

---

[2] The presumption is rebuttable and does not shift the ultimate burden of proof from the government's shoulders. But it does create a burden of *production* on the defense to submit at least some credible evidence that might purport to overcome it. And even if the defense does submit such evidence, the presumption remains as a factor that may be considered by the Court among others in determining whether the defendant should be detained, and the presumption retains "evidentiary weight." *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight") (citations omitted); *see also United States v. Ali*, 793 F.Supp.2d 386, 388 and 388 n.2 (D.D.C. 2011) ("Even if such contrary evidence or credible proffers are

cause and triggers the presumption. *See*, *e.g.*, *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("the indictment alone would have been enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community").

The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988). For a detention decision based upon risk of flight, the government only need prove by a preponderance of the evidence that there are no conditions or combinations of conditions that will assure the defendant's appearance as required. *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986). Furthermore, at a detention hearing, the government may present evidence by way of a proffer. *Smith*, 79 F.3d at 1209–10.

In considering whether there are conditions of release which will reasonably assure the safety of any other person and the community, and the appearance of the defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

The Pretrial Services Report has found that "[n]o condition or combination of conditions can reasonably assure the defendant's appearance or safety to the community."

## A.   Nature and Circumstances of the Offense

The Defendant is in the business of unlawfully distributing large quantities of marijuana, and he backs up his unlawful activities with the threat of violence by his possession of firearms

---

offered, the presumption remains as a factor to be considered by the Court amongst others in determining whether the defendant should be detained").

and firearm-related materials.   On the two separate occasions charged in the indictment, Mr. Chambliss was found to be in possession of distribution-level quantities of marijuana, and of illegal firearms materials: First, a 30-round extended magazine (illegal to possess in the District of Columbia) in the same bag as approximately two pounds of marijuana; second, a loaded firearm with a 13-round magazine, with the Defendant's DNA on it, steps away from a backpack containing a distribution quantity of marijuana.   This firearm was illegal for the Defendant to possess at all, because he had been previously convicted of a crime of violence in the District of Columbia; and the Defendant's possession of the firearm in furtherance of his drug trafficking offense led to his indictment for a violation of 18 U.S.C. § 924(c).

It is notable that the Defendant possessed a firearm in July 2023, only four months after he was arrested in possession of the large-capacity magazine and drugs in his vehicle in March 2023. He apparently felt it important to his narcotics trade that he keep a loaded gun, even after it was clear law that enforcement was aware of his activities.

If convicted of the charges in the indictment, Mr. Chambliss faces a mandatory minimum term of eight years in prison, based on the three-year mandatory minimum for the D.C. Code felon-in-possession charge, plus five years for the 18 U.S.C. § 924(c) charge.   At the high end, Mr. Chambliss faces up to life in prison.   The potential penalties in this case may incentivize the Defendant to flee the jurisdiction rather than face trial for his offenses.

For these reasons, the nature and circumstances of the offense weigh in favor of detention.

**B.**     **Weight of the Evidence**

The second factor to be considered, the weight of the evidence, also clearly weighs in favor of detention.   This factor is a "common-sense" consideration: "[I]f the evidence against a defendant

is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *United States v. Blackson*, No. 23-cr-25 (BAH), 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023) (Howell, C.J.), *aff'd*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).

The evidence in this case was recovered by multiple law enforcement officers during a probable cause search of a vehicle and in the execution of a search warrant at the Defendant's home.  In both instances, law enforcement found documents identifying the Defendant.  In both instances, law enforcement had previously observed the Defendant carrying the bags that contained contraband.  In both instances, the firearm and ammunition were found in close proximity to the Defendant's drugs.  On the firearm, a DNA test demonstrated "Very Strong Support for Inclusion" for the Defendant's DNA.  Just on the basis of the items recovered on the two occasions for which the Defendant is charged, the evidence is very strong.

But this evidence is further corroborated by other evidence obtained before and after the dates of the offenses charged:  The Defendant's public Instagram activity, including photographs depicting marijuana and packaging with the Defendant's face on it, lends ample support for the charges.  For example, on March 5, 2023, just two days before his March 7, 2023 arrest with the loaded 30-round magazine and marijuana, the Defendant posted pictures of himself holding stacks of cash and lighting an apparent marijuana cigarette:



*Moneyman_biggs Instagram posts from March 5, 2023*

The weight of the evidence supports pretrial detention.

## C.  **The Defendant's History and Characteristics**

The Defendant has multiple prior convictions, including multiple drug convictions, but continued to sell drugs (and possess firearm materials)—even while on supervised release—as reflected in the Pretrial Services Report.  Indeed, the Defendant's March 2023 arrest occurred while he was on supervised release in Maryland from a conviction for possession of a controlled dangerous substance, and his supervision was terminated unsuccessfully in June 2023 (just a month before the gun was found in his home).  This violation illustrates the Defendant's disregard for the law and the Court's authority.

Moreover, the Defendant's drug-dealing activity has been ongoing.  When he was arrested last week, on March 15, 2024, law enforcement found in plain view more than three kilograms of marijuana in the bedroom where the Defendant was staying.

The Defendant's history and characteristics demonstrate that he will continue to break the law if released pretrial, because his prior conduct shows that, when released and given the opportunity, he breaks the law.  This factor weighs heavily in favor of detention.

### D.  Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention.  As noted above, based on the charges in the indictment, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community" under 18 U.S.C. § 3142(e)(3).

The Court is well aware of the exceptional danger lurking at the nexus of guns and drugs. "[A]lthough the mere fact that the defendant possessed a firearm does not constitute evidence of a danger to the community, possession of a firearm by a convicted felon who is allegedly engaged in illegal drug distribution is a different matter." *United States v. Taylor*, 289 F. Supp. 3d 55, 71 (D.D.C. 2018).  Over a hundred DC residents are killed each year by guns, and hundreds more are killed by drugs.  When a drug deal goes bad, it goes far worse when one or more participant possesses a dangerous weapon.  And the prevalence of firearms among drug dealers only increases the pressure for all other drug dealers to carry a gun.  Accordingly, the fact that the Defendant was arrested in possession of large quantities of marijuana—rather than, say, fentanyl—does not negate his danger to the community.  A bullet does not distinguish between THC and PCP.

17

Moreover, under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., "[t]he statutory language, as well as the legislative history, unequivocally establishes that Congress intended to equate traffic in drugs with a danger to the community." *United States v. Strong*, 775 F.2d 504, 506 (3d Cir. 1985).   As the Defendant's conduct has shown, criminal convictions and a court order are insufficient to prevent him from selling drugs to the public, including on social media.

Accordingly, this factor weighs in favor of detention.

### E.  Weighing

As discussed, each of the four § 3142(g) factors weigh in favor of detention.  The Pretrial Services Report states, "No condition or combination of conditions can reasonably assure the defendant's appearance or safety to the community."   The report is correct and the Defendant should be detained pending trial.

### IV.   Conclusion

The government respectfully requests that the Court issue an Order granting its motion that defendant Tamonie Chambliss be held without bond pending trial.

Respectfully submitted,

MATTHEW GRAVES,
UNITED STATES ATTORNEY


By:     */s/ Adam L.D. Stempel*
        ADAM L.D. STEMPEL
        Special Assistant United States Attorney
        D.C. Bar Number 1615015
        United States Attorney's Office
        601 D Street, NW
        Washington, DC  20530
        Telephone: 202-252-6736
        Email: adam.stempel2@usdoj.gov

18