## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**v.**<br><br>**TAMONIE CHAMBLISS,**<br><br>**Defendant.** | **CRIMINAL NO. 24-CR-00082 (TJK)** |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits this Memorandum in Aid of Sentencing.

On June 20, 2024, Defendant Tamonie Chambliss pleaded guilty to Count Four of the Indictment, charging Unlawful Possession with Intent to Distribute Marijuana, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(D) and Count Three of the Indictment, charging one count of Unlawful Possession of a Firearm by an Individual Previously Convicted of a Crime of Violence, in violation of Title 22, District of Columbia Code, Section 4503(a)(1) and (b)(1). (*See* Indictment, ECF No. 1).

Accordingly, and in alignment with the 3553(a) factors and the terms of the Plea Agreement, the government requests the Court sentence Defendant to 48 months of imprisonment followed by three years of supervised release. This would represent a sentence within the calculated guidelines based on the facts of the case. In support thereof, the government respectfully submits the following:

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Relevant Procedural History

On February 15, 2024, Defendant was indicted on six counts related to unlawful possession with intent to distribute marijuana, unlawful possession of a firearm by a person convicted of a crime of violence, possession of a firearm in furtherance of a drug trafficking offense, possession of a large capacity ammunition feeding device, and possession of unregistered ammunition. (*See* Indictment, ECF No. 1). On June 20, 2024, Defendant pleaded guilty to Count Four and Count Three of the Indictment, pursuant to a written plea agreement. (*See* Plea Agreement, ECF No. 19.) Under the terms of the plea agreement, the government agreed to dismiss any remaining charges pertaining to Defendant at the sentencing hearing.  (*Id*. ¶ 3.)

### B.  The Defendant's Conduct

From July 2022 until the summer of 2023, the Metropolitan Police Department's Violence Reduction Unit ("VRU"), in conjunction with the Federal Bureau of Investigation ("FBI"), investigated sales of controlled substances and crimes of violence involving firearms occurring in the 5300 block of Clay Terrace, Northeast in Washington, D.C.

During the investigation, law enforcement identified a group, or "crew," of individuals believed to be involved in narcotic sales, acts of violence, and the transfer and possession of illegal firearms.  Law enforcement identified Tamonie Chambliss ("Defendant") as a member of a group in this area that identified themselves as "Clay Terrace Hitsquad" or "Double Back Gang." (*See* Government's Submission of Elements of Offense and Proffer of Evidence in Support of Defendant's Plea of Guilty ("Statement of Offense"), ECF No. 20; *See also* Presentence Investigation Report ("PSR"), ECF No. 24) The investigation found that Defendant regularly sold marijuana and marketed the drug through social media and distinctive packaging showing his face.

(*Id*.) Accordingly, Defendant distributed a controlled substance through mass-marketing by means of an interactive computer service.



*Marijuana packaging with Defendant's face on the cover from his Instagram account (Nov. 21, 2021).*

On March 7, 2023, during a routine patrol around the Richardson Dwelling apartment complex, the Sixth District Crime Suppression Team observed a gray Lexus sedan parked in front of 260 54th St. Northeast, Washington, D.C., one block from Clay Terrace, surrounded by a group of individuals who quickly departed when the police cruiser approached. (*Id*.). Officers investigated the Lexus, running a WALES/NCIC query on the vehicle's license plates (GH 8204), revealing that the tag was reported stolen on August 28, 2020, from the District of Columbia. (*Id*.). A VIN search returned that the vehicle was unregistered, despite several individuals claiming ownership but refusing to provide officers with identifying documentation. One of these individuals presented officers with a fictitious insurance card that listed the Defendant as the operator of the vehicle. (*Id*.).

Officers ran a history check of the vehicle's VIN and found that Defendant, who officers observed standing across the street, had been previously stopped driving the vehicle in Laurel,

Maryland. (*Id*.). A firearm-detecting K9 called to the scene alerted law enforcement to the presence of firearm materials inside the vehicle. (*See* Statement of Offense, ECF No. 20). Officers executed a search of the vehicle and found a clear twist sandwich bag in the center console containing 10 stamped M-30 pills (Oxycodone). (*Id*.). Officers also found a black Fortnite-branded backpack containing the following: four bags of green leaf substance weighing 444 grams, 476.5 grams, 43.5 grams, and 12 grams respectively, 1 black scale, multiple zip-top bags, and a 30-round extended magazine containing 21 rounds of .45 caliber ammunition. (*Id*.). The total amount of green leaf substance weighed approximately 976 grams, or 34.4 ounces. A portion of the substance field-tested positive for marijuana. (*Id*.). The vehicle also contained credit cards, identification cards, and a Maryland vehicle registration assigned to the Defendant.[1]

 

*Recovery from the March 7, 2023 search of the Lexus.*

On July 26, 2023, as part of the same investigation, law enforcement executed a search warrant for Defendant's residence, 5379 Clay Terrace Northeast, Washington, D.C. (*Id*.). Defendant was not present for the execution of the warrant. Law enforcement recovered a Glock 30S .45 caliber handgun bearing serial number BWER198, with 1 round in chamber and 11 rounds

---

[1] The Defendant had also been observed operating the vehicle and carrying the Fortnite-branded backpack on multiple occasions in February 2023.

in a 13-round magazine, as well as an inside-the-waistband handgun holster. (*Id*.). Law enforcement also recovered a black backpack containing three plastic bags of "green weed substance" with the following weights: 21.5 grams; 26.74 grams; and 300 grams. (*Id*.). Law enforcement recovered the handgun and holster from a kitchen cabinet, within a few steps of the drugs. (*Id*.). The handgun used the same caliber ammunition as was found in the gray Lexus in March 2023. (*See* Statement of Offense, ECF No. 20).



*Recovery from the search of 5379 Clay Terrace, N.E., Washington, D.C.*

Three individuals present during the search consented to buccal swabs for DNA testing. The Defendant's buccal swab, the buccal swabs of the three individuals in the residence, and swabs from the firearm and magazine were sent to the FBI laboratory for analysis. (*See* Statement of Offense, ECF No. 20). On January 8, 2024, the results came back, indicating "very strong support" for the Defendant's inclusion on all three evidence swabs (e.g., a likelihood ratio of 760 quintillion for Defendant's inclusion on the firearm), and the exclusion of most or all the other individuals. (*Id*.). The Defendant admits that he possessed the firearm seized on July 26, 2023. (*Id*.).

On March 15, 2024, the U.S. Marshals Service executed an arrest warrant at an address in Laurel, Maryland, where the Defendant was found and arrested. Upon securing the Defendant and the residence, law enforcement observed in plain view multiple packages of marijuana, totaling approximately 3.4 kilograms. (*Id*.). This total comprised four vacuum-sealed bags, each weighing

just over half a kilogram, two large plastic twist-tied bags weighing just over one pound each, and another large twist-tied bag weighing approximately 300 grams. (*See* Statement of Offense, ECF No. 20). The marijuana was recovered from the bedroom where Defendant was staying and from a kitchen counter. (*Id.*). A portion of the substance field-tested positive for the presence of THC. (*Id.*).



*Examples of the marijuana bags recovered from the Laurel, Maryland search on March 15, 2024.*

The Defendant admits that he knew that he had been convicted of at least one offense punishable by a term of incarceration of one year or more and that he was prohibited from having a firearm, but possessed the firearm seized on July 26, 2023, despite knowing about his prohibited status. (*See* Statement of Offense, ECF No. 20). The defendant also admits that the predicate offense was a crime of violence, namely Robbery in the District of Columbia. (*See* Statement of Offense, ECF No. 20).

## II.   CALCULATION OF SENTENCING GUIDELINES

The government and Defendant agreed to the Sentencing Guidelines calculation contained in the Plea Agreement. (Plea Agreement, ECF No. 19 ¶ 4.) With respect to Count Four, the parties calculated that Defendant had a Criminal History Category of II and a total offense level of 10, resulting in a sentencing guideline range of 8 months to 14 months. The guideline term of

supervised release is three years under U.S.S.G. § 5D1.2(a)(1).  (Plea Agreement, ECF No. 19 ¶ 4.)

Pursuant to the count of conviction imposed in Count Three (the DC Code offense), the statutory minimum term of imprisonment to be imposed is 36 months, with a range of up to 48 months of imprisonment. (Plea Agreement, ECF No. 19 ¶ 4.) Chapter 6.1 of the District of Columbia Sentencing Commission's Voluntary Sentencing Guidelines Manual (2023) (the "D.C. Sentencing Guidelines") requires that any sentence imposed pursuant to Count Three "must be imposed consecutively" to any other sentence. (Plea Agreement, ECF No. 19) Accordingly, the aggregate guidelines range of imprisonment for the federal and D.C. Code offense, as calculated by the parties, is 44 months to 62 months of imprisonment. (Plea Agreement, ECF No. 19)

The Presentence Investigation Report (hereinafter, "PSR") aligned with the parties' sentencing calculations, except for the Criminal History Category, which it determined was III, resulting in a sentencing guidelines range of 10 to 16 months. (*See* PSR, ECF No. 24). This is based on the PSR calculating Defendant's 2017 Robbery conviction as a two-point offense. (*See* PSR, ECF No. 24) At the time of the government's calculation, it did not possess the full disposition of the matter, relying only on the case note that Defendant's probation was set aside before completion pursuant to the Youth Rehabilitation Act. The government acknowledges the accuracy of the updated PSR calculations, noting that the recommended sentence still falls within the revised guidelines range.

## III.    RECOMMENDATION

All the applicable factors set forth in Title 18, United States Code, Section 3553(a), should be considered by this Court. *See United States v. Gall*, 552 U.S. 38, 49-50 (2007). These factors include "the nature and circumstances of the offense and the history and characteristics of the

defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (*id*. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (*id*. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (*id*. § 3553(a)(6)). The government's sentencing recommendation is based upon a review and balancing of these factors.

### A. Nature and Circumstances of the Offense

As described in detail the factual background, the nature and circumstances of the defendant's offenses warrant a significant sentence. The Defendant's path to this day did not involve an isolated misstep or incident, but rather multiple arrests and contacts with the criminal justice system dating back to 2017. Each of these encounters, though, had little to no deterrent effect on the defendant's behavior. Instead, he brazenly used social media to promote and sell marijuana, while also knowingly possessing a firearm despite his prohibited status.

Although "possessory" gun offenses are often perceived to be "minor" ones, they are anything but. As the Court is well aware, our community has recently faced staggering levels of gun violence. The District of Columbia saw over 200 homicides in each of 2021, 2022 and 2023, the highest level since 2003. (*See* MPD, *District Crime Data at a Glance*.)[2] About 84 percent of the 203 homicides in 2022 involved the use of a firearm. (*See* MPD, *Annual Report 2023*, 17). [3] An estimated 95% of the victims are from underrepresented communities.[4] Moreover, many shootings in this community are driven, at least in part, by the drug trade. Thus, possessing a

---

[2] *Available at* https://mpdc.dc.gov/page/district-crime-data-glance.
[3] *Available at* https://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/publication/attachments/AR_2022_lowres.pdf.
[4] *Id*.

8

firearm—especially in relation to a drug trafficking crime—is serious.

Defendant possessed a Glock 30S .45 caliber handgun, which was loaded when found at his residence, alongside 11 rounds in a 13-round magazine. (*See* Statement of Offense, ECF No. 20). Law enforcement also found ammunition and an extended magazine clip for the same weapon in Defendant's vehicle. (*Id.*).  Most concerning is that this is not Defendant's first offense involving the use of a firearm. In 2017, Defendant pled guilty to possession of an unregistered firearm in connection to a robbery for which he served 24 months for the robbery and 9 months for the firearm possession, respectively. (PSR, ECF No. 24 ¶ 47.) In that instance, Defendant put a gun to a victim's side as part of a robbery in the District of Columbia. Despite his prior conviction, Defendant continued to possess a firearm with the understanding of the consequences that could arise given his criminal history.

In addition to the firearm, the drug trafficking activity in which the Defendant was engaged in is also serious. On multiple occasions throughout the investigation, Defendant possessed large quantities of marijuana, include 3.4 kilograms at the time of his arrest. Defendant also utilized social media to promote marijuana to a broader audience, boldly using his own face on packaging to ensure that his customers knew the source of the product. As with the firearm, Defendant has previously had contact with law enforcement related to his sale and distribution of marijuana, including a guilty plea in 2018. (PSR, ECF No. 24 ¶ 48.)

Narcotics sales, whether in-person within the most at-risk neighborhoods, including Defendant's own located in Ward 7, or online across a wider audience on the internet, are dangerous and often bring violence and disruption to our communities. Such activity remains the focus of law enforcement's daily fight and continues to make it harder for individuals and families to live their respective lives without fear of violence that firearms and drug trafficking often fosters.

## B.  History and Characteristics of the Defendant

Defendant, who is now 28 years old, has three adult convictions. All these convictions involve either the sale or possession of controlled substances or the possession of a firearm. (PSR, ECF No. 24 ¶ 47-49). In 2017, Defendant pled guilty to robbery and possession of an unregistered firearm. Specifically, Defendant approached a victim in Northeast Washington, D.C., demanded his property while holding a firearm at his side and stole approximately $650. (PSR, ECF No. 24 ¶ 47.). For his role in the robbery, Defendant was sentenced to 24 months imprisonment, with 15 months suspended, as well as three years of supervised released. (PSR, ECF No. 24 ¶ 47.). For possession of a firearm, Defendant was sentenced to 9 months imprisonment, with three years supervised release. (PSR, ECF No. 24 ¶ 47.).

In 2018, Defendant pled guilty to possession with intent to distribute marijuana, specifically possessing more than two ounces. Defendant was sentenced to 120 days imprisonment and one year of probation. (PSR, ECF No. 24 ¶ 48.).  In 2020, Defendant pled guilty to possession of a controlled substance in Maryland, for which he was sentenced to one year imprisonment, suspended, and one year of supervised probation. (PSR, ECF No. 24 ¶ 49.).  According to Maryland probation, Defendant's probation concluded unsuccessfully on June 13, 2023. (PSR, ECF No. 24 ¶ 49.). These repeated and serious contacts with law enforcement and the criminal justice system failed to deter Defendant's criminal behavior and activities involving narcotics and firearms. Despite relatively lenient sentences, Defendant has failed to take advantage of these opportunities and continued to be involved in criminal activity that has adversely impacted his own community.

Most concerning, Defendant's continued involvement in drug trafficking and firearms occurs despite having a relatively strong support system around him. His mother, prior to her

passing, and his grandmother provided him with all necessities and his maternal uncle served as a male role model throughout his life. (PSR, ECF No. 24 ¶ 64.). Defendant graduated high school, where he excelled academically, and received an athletic scholarship to play football at Virginia Union University and later Bowie State University. (PSR, ECF No. 22 ¶ 82.). Having all requisite support and opportunities before him, Defendant derailed his academic future in 2017 when he committed a robbery and has continued to be involved in criminal activity through to this current case before the court.

Defendant's criminal history, particularly in the face of opportunities provided to him both through familial and academic support, as well as by the court's sentences, demonstrate a lack of respect for the rule of law and safety of the community.

### C. Need for Deterrence

As noted above, Defendant's conduct occurred against the backdrop of ongoing gun violence exploding in this city. Individuals who engage in this behavior must understand that their conduct is unacceptable and not a reflection of the environment members of the D.C. community wish to inhabit. Given the adverse impact that the unlawful possession of firearms and distribution of illegal narcotics has on society, it is important that the Court impose a sentence that deters others from undermining the rule of law.

Such deterrence is notably important when involving individuals that seek to disseminate drugs and possess firearms in communities that continue to struggle with both drivers of violence. Those individuals who participate in these illegal activities should know that there are serious consequences for their actions, including a deprivation of their liberty interests. Given the catastrophic impact of guns and drugs on our community, a substantial sentence in this case is warranted.

### D.  Other Factors

The Government's recommended sentence is also justified to protect the public from Defendant, who has continued to be involved in criminal activity. It would also give Defendant ample time to pursue further educational and vocational training and participate in other programs that will hopefully prevent him from reoffending and allow him to realign his trajectory to the one he had prior to being involved in criminal activity.

### IV.  CONCLUSION

For the foregoing reasons, the government recommends that the Court impose a sentence of 48 months, to be followed by a period of supervised release of three years, as a sentence that serves the interests of justice and is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).

<div style="margin-left:40%">

Respectfully Submitted,

Matthew M. Graves
United States Attorney
D.C. Bar No. 481052

By:    _____/s/_____
Ernesto J. Alvarado
Special Assistant United States Attorney
D.C. Bar No. 1017319
United States Attorney's Office
601 D Street, NW
Washington, D.C. 20530
(202) 740 - 4578
Ernesto.alvarado2@usdoj.gov

</div>

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2024, a copy of the foregoing Memorandum was served on counsel for Defendant via the Court's electronic case filing system.

/s/
_____
Ernesto J. Alvarado
Special Assistant United States Attorney